

State of PENNSYLVANIA

# FIXED RATE NOTE
## CLOSED END
### (Home Equity Conversion)

March 25, 2013

346 Congress Avenue, Lansdowne, Pennsylvania 19050 (Property Address)

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means Reverse Mortgage USA, Inc. and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated March 25, 2013 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on **April 4, 2098**. Interest will be charged on unpaid principal at the rate of **Five AND Sixty Thousandth percent (5.060%)** per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 6 of this Note.

### (B) Place
Payment shall be made at Reverse Mortgage USA, Inc., 6500 River Place Blvd, Building 1, Ste 425, Austin, TX 78730 or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. BORROWER'S RIGHT TO PREPAY
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or



penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 10 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance.

To the extent Borrower prepays any outstanding balance under this Note, such amounts will no longer be available to be advanced under this Note.

## 6. IMMEDIATE PAYMENT-IN-FULL

### (A) Death or Sale

Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

### (B) Other Grounds

Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.



**(D) Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**7. WAIVERS**
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**10. RELATIONSHIP TO SECOND NOTE**
**(A) Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255 (I)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**
Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or
(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**
Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 6 of this Note; or
(ii) Be obligated to pay interest under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 of this Note or any Allonge to this Note.

Page 3 of 4



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Hortense C. Tippett_ (SEAL)    _03-25-2013_
Hortense C Tippett                        Date



# Allonge

Loan Number:

FHA Case Number:

Borrower Name(s):  **Hortense C Tippett**

Property Address:  **346 Congress Avenue**
**Lansdowne, Pennsylvania 19050**

Note/Loan Amount:  **$307,500.00**

Note/Loan Date:  **3/25/2013**

*PAY TO THE ORDER OF:*

WITHOUT RECOURSE

Company Name:  **Urban Financial Group Inc.**

Signature:

Name:

Title:

Printed: 4/3/2013
AllongeUrbanWholesale / 0856



prepared by:          Reverse Mortgage USA, Inc.
                      6500 River Place Blvd, Building 1, Ste 425
                      Austin, TX 78730

record and return to:    Madison Settlement Services
                         580 Carlisle Street, Suite B
                         Hanover, PA 17331

RD BK05329-0316          MG-MORTGAGE
2013033376    05/20/2013 02:27:25 PM:2
RCD FEE: $114.50

_____ [Space Above This Line For Recording Data] _____

**Commonwealth of PENNSYLVANIA**

*Upper Darby Twp.*

*(This is a Closed End Mortgage and secures future
advances pursuant to 42 Pa. CS. §§8143 and 8144, Act No. 126 of 1990)*

# FIXED RATE CLOSED-END
# HOME EQUITY CONVERSION MORTGAGE

### THIS CLOSED-END MORTGAGE SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument") is given on **March 25, 2013**. The mortgagor is
**Hortense C Tippett, A Single Person**, whose address is **346 Congress Avenue, Lansdowne,
Pennsylvania 19050** ("Borrower"). This Security Instrument is given to **Reverse Mortgage USA, Inc.**,
which is organized and existing under the laws of **United States of America**, and whose principal office
and mailing address is **6500 River Place Blvd, Building 1, Ste 425, Austin, TX 78730**("Lender").
Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future
advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this
Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's
Fixed-Rate Note dated the same date as this Security Instrument ("Note").  This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a fixed rate
(interest), and all renewals, extensions and modifications of the Note, up to a maximum principal
amount of **Three Hundred Seven Thousand, Five Hundred Dollars and Zero Cents** (U.S.
**$307,500.00** ); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect
the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and

HEC

(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in **DELAWARE** County, PENNSYLVANIA:

**See legal description as Exhibit A attached hereto and made a part hereof for all intents and purposes**

which has the address of
**346 Congress Avenue, Lansdowne, Pennsylvania 19050**, ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding

2013033376 Page: 317.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 2 of 13
Order: d Comment:

indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence  after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of



Page 3 of 11

HEC

any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(b) Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

**(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 (a)(ii) and (b) occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be



............... 2013033376 Page: 319.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 4 of 13
Order: d Comment:

considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.**

Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

HECM First Mortgage

2013033376 Page: 320.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 5 of 13
Order: d Comment:

**(b) Tax Deferral Programs.**

> Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.**

> Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

> **(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

> **(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

>> (i) This Security Instrument is assigned to the Secretary; or

>> (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

>> If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

> **(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

>> (i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

>> (ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

> **(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though

2013033376 Page: 321.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 6 of 13
Order: d Comment:

Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

2013033376 Page: 322.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 7 of 13
Order: d Comment:

**20. Foreclosure Procedure. If Lender requires immediate payment-in-full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**24. Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances of interest, MIP, Servicing Fees, and other charges shall be obligatory.

**28. Priority of Lien for Future Advances.** Borrower acknowledges that this Security Instrument secures obligatory future advances under the terms of the Loan Agreement. Without limiting the foregoing, this Security Instrument secures all advances made by Lender of any kind or nature described in 42 Pa. C.S. § 8144.

Borrower acknowledges that Borrower cannot limit the amount of the obligation and indebtedness of Borrower to Lender nor limit the amount of the future advances of Lender to Borrower except by a written notice ("Notice to Terminate") sent to Lender only at the address for Lender listed on Page 1 of this Security Instrument. The aforesaid written notice will not be effective unless it is acknowledged and in the form and in accordance with the Lien Priority Law (Act 126 of 1990) as amended.

Borrower acknowledges that Borrower's Notice To Terminate will not apply to: (i) any interest

2013033376 Page: 323.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 8 of 13
Order: d Comment:

subsequently accruing on advances by Lender to Borrower before the Notice to Terminate is recorded and indexed as an amendment to the Security Instrument; nor (ii) any money subsequently advanced by Lender for: (1) construction, repair, or alternation of the Property; and (2) payment of taxes, assessments maintenance, insurance, and/or protection of the lien of this Security Instrument and the Property; and (3) expenses of Lender, including but not limited to, counsel fees, court costs, appraisal fees, inspection fees, and any other fees and expenses incurred as a result of an event of default by Borrower. (4) Borrower acknowledges that Lender will not be obligated to advance any additional monies to Borrower or for the benefit of Borrower or the Property, notwithstanding Paragraph 28 above, once Lender receives, or has notice of, a Notice to Terminate executed by Borrower and/or a third party lender in reference to this Security Instrument and/or the Property.

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider          ☐ Planned Unit Development Rider

☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Hortense C. Tippett_ (SEAL)                    _05-25-2013_

Hortense C Tippett                              Date

2013033376 Page: 324.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 9 of 13
Order: d Comment:

_____ [Space Below This Line For Acknowledgment] _____

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF _Delaware_                    SS:

BE IT REMEMBERED, that on this _25th_ day of _March_, 20_13_, before me,

the subscriber, the undersigned authority, personally appeared _____

_____ Hortense C. Tippett _____

who, I am satisfied is the person mentioned in the within above instrument, and he/she acknowledged

that he/she signed, sealed and delivered the same as his/her voluntary act and deed. All of which is

hereby certified.

_Mary J Kane_

Notary Public

> COMMONWEALTH OF PENNSYLVANIA
> NOTARIAL SEAL
> MARY J. KANE, Notary Public
> Springfield Twp., Delaware County
> My Commission Expires October 28, 2015

[Notary Stamp]

My commission expires on: _____

CERTIFICATE OF ADDRESS

I hereby certify that the address of the within Mortgagee is _6500 River Place Blvd._

_Bldg 1, Ste 425, Austin, TX 78730_

_Jacki Ernst_
On behalf of Mortgagee

By _Jacki Ernst_

Name: _Jacki Ernst_

Title: _Agent_

2013033376 Page: 325.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 10 of 13
Order: d Comment:

## EXHIBIT A

Exhibit A to the Mortgage made on **March 25, 2013,** by **Hortense** C **Tippett, A Single Person**
("Borrower") to  **Reverse Mortgage USA, Inc.** ("Lender"). The Property is located in the county of
**DELAWARE**, state of **Pennsylvania**, described as follows:

### Description of Property

SEE EXHIBIT "A" ATTACHED HERETO



2013033376 Page: 326.00

Description: Delaware,PA Document - Book.Page 5329.316 Page: 11 of 13
Order: d Comment:

LEGAL DESCRIPTION

EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF DELAWARE, STATE OF Pennsylvania, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND, SITUATE TO THE TOWNSHIP OF UPPER DARBY, COUNTY OF DELAWARE AND THE COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED IN ACCORDANCE WITH A PLAN OF PROPERTY MADE FOR HOVET H. JOHNSON BY GILROY DAMON AND ASSOCIATES, INC., CIVIL ENGINEERS OF SHARON HILL, PENNSYLVANIA ON APRIL 11, 1973 AS FOLLOWS, TO WIT:-

BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF CONGRESS AVENUE (50 FEET WIDE) AT THE DISTANCE OF 300.40 FEET MEASURED SOUTHWESTERLY ALONG THE SAID SIDE OF CONGRESS AVENUE FROM THE SOUTHWESTERLY CORNER OF CONGRESS AVENUE EXTENDED AND THE TITLE LINE IN THE BED OF BARRETT ROAD (45 FEET WIDE).

CONTAINING IN FRONT OR BREADTH ON CONGRESS AVENUE MEASURED SOUTH 24 DEGREES 23 MINUTES 65 FEET AND EXTENDING OF THAT WIDTH TO LENGTH OR DEPTH BETWEEN PARALLEL LINES ON A COURSE OF 65 DEGREES 37 MINUTES WEST BEING AT RIGHT ANGLES TO SAID CONGRESS AVENUE, 100 FEET.

MORE COMMONLY KNOWN AS 346 CONGRESS AVENUE

Commonly known as 346 CONGRESS Avenue, Lansdowne, PA 19050
However, by showing this address no additional coverage is provided

LEGAL DESCRIPTION

EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF DELAWARE, STATE OF Pennsylvania, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND, SITUATE TO THE TOWNSHIP OF UPPER DARBY, COUNTY OF DELAWARE AND THE COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED IN ACCORDANCE WITH A PLAN OF PROPERTY MADE FOR HOVET H. JOHNSON BY GILROY DAMON AND ASSOCIATES, INC., CIVIL ENGINEERS OF SHARON HILL, PENNSYLVANIA ON APRIL 11, 1973 AS FOLLOWS, TO WIT:-

BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF CONGRESS AVENUE (50 FEET WIDE) AT THE DISTANCE OF 300.40 FEET MEASURED SOUTHWESTERLY ALONG THE SAID SIDE OF CONGRESS AVENUE FROM THE SOUTHWESTERLY CORNER OF CONGRESS AVENUE EXTENDED AND THE TITLE LINE IN THE BED OF BARRETT ROAD (45 FEET WIDE).

CONTAINING IN FRONT OR BREADTH ON CONGRESS AVENUE MEASURED SOUTH 24 DEGREES 23 MINUTES 65 FEET AND EXTENDING OF THAT WIDTH TO LENGTH OR DEPTH BETWEEN PARALLEL LINES ON A COURSE OF 65 DEGREES 37 MINUTES WEST BEING AT RIGHT ANGLES TO SAID CONGRESS AVENUE, 100 FEET.

MORE COMMONLY KNOWN AS 346 CONGRESS AVENUE

Commonly known as 346 CONGRESS Avenue, Lansdowne, PA 19050
However, by showing this address no additional coverage is provided

RD BK05388-0874    AS-ASSIGNMENTS
2013058401    08/21/2013 12:41:30 PM:1
RCD FEE: $86.50

THOMAS J. JUDGE SR, ROD

Return To:
Madison Settlement Services
580 Carlisle Street, Suite B
Hanover, PA 17331

Prepared By:
Suzy Kern - Reverse Mtg. USA, Inc.
6500 River Place Blvd.
Austin, TX 78730
Upper Darby Township

Note Amount: $307,500.00

MH5871?

## Assignment of Mortgage/Deed of Trust

FOR VALUE RECEIVED, the undersigned holder of a Mortgage/Deed of Trust (herein "Assignor") whose address is **6500 River Place Blvd, Building 1, Ste 425, Austin, TX 78730**, does hereby grant, sell, assign, transfer and convey, unto **Urban Financial Group Inc.** and existing under the laws of (herein "Assignee"), whose address is **8909 South Yale Ave, Tulsa, OK 74137**, a certain Mortgage/Deed of Trust dated **March 25, 2013** made and executed by **Hortense C Tippett, A Single Person**, to and in favor of **Reverse Mortgage USA, Inc.**, upon the following described property situated in **DELAWARE** County, State of **PENNSYLVANIA**:

**SEE EXHIBIT "A" ATTACHED HERETO**

Commonly Known As: **346 Congress Avenue, Lansdowne, Pennsylvania 19050**

such Mortgage/Deed of Trust having been given to secure payment of **$307,500.00**, (Maximum Principal Amount)

which Mortgage is of record in Book, Volume, or Liber No. 5329 , at page 316 (or as No. 2013033376 ) of the Land Records of Delaware County, State of PA , together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage/Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage/Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage/Deed of Trust on 4 - 1 - , 20 13

Reverse Mortgage USA, Inc.
(Assignor)

By: _____
Dawn Bachman

Mortgage Banking Manager

STATE OF ▓▓▓ Texas
COUNTY OF ▓▓▓ Travis

On 4 - 1 - 13 before me, Ruben Maltos , a Notary Public in and for said County/City and State, personally appeared Dawn Bachman , whose name is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted executed the instrument.
WITNESS my hand and official seal.

_____
Notary Public

My Commission Expires: April 20, 2016

RUBEN MALTOS
Notary Public, State of Texas
My Commission Expires
April 20, 2016

Printed: 4/1/2013
Page 1 of 1    AssignmentOfSecurityInstrument_RMUSA / 0078

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF DELAWARE, STATE OF Pennsylvania, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND, SITUATE TO THE TOWNSHIP OF UPPER DARBY, COUNTY OF DELAWARE AND THE COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED IN ACCORDANCE WITH A PLAN OF PROPERTY MADE FOR HOVET H. JOHNSON BY GILROY DAMON AND ASSOCIATES, INC., CIVIL ENGINEERS OF SHARON HILL, PENNSYLVANIA ON APRIL 11, 1973 AS FOLLOWS, TO WIT:-

BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF CONGRESS AVENUE (50 FEET WIDE) AT THE DISTANCE OF 300.40 FEET MEASURED SOUTHWESTERLY ALONG THE SAID SIDE OF CONGRESS AVENUE FROM THE SOUTHWESTERLY CORNER OF CONGRESS AVENUE EXTENDED AND THE TITLE LINE IN THE BED OF BARRETT ROAD (45 FEET WIDE).

CONTAINING IN FRONT OR BREADTH ON CONGRESS AVENUE MEASURED SOUTH 24 DEGREES 23 MINUTES 65 FEET AND EXTENDING OF THAT WIDTH TO LENGTH OR DEPTH BETWEEN PARALLEL LINES ON A COURSE OF 65 DEGREES 37 MINUTES WEST BEING AT RIGHT ANGLES TO SAID CONGRESS AVENUE, 100 FEET.

MORE COMMONLY KNOWN AS 346 CONGRESS AVENUE

Commonly known as 346 CONGRESS Avenue, Lansdowne, PA 19050
However, by showing this address no additional coverage is provided

## DO NOT DETACH



**Robert A. Auclair, Esq.**
Delaware County Recorder of Deeds
Government Center, Room 107
201 W. Front Street
Media, PA 19063

**Instrument Number: 2023005900**
**Volume/Page: RECORD BK 6889 PG 3612**
**Recorded Date: 02/22/2023 9:52:40 AM**

| | |
|---|---|
| **Transaction Number:** 958757<br>**Collected By:** pontem<br>**Document Type:** ASSIGNMENTS<br>**Document Page Count:** : 3 | **Return To (Simplifile):**<br>McCabe, Weisberg & Conway, P.C.<br>123 SOUTH BROAD STREET SUITE 1400<br>PHILADELPHIA, PA 19109 |
| **Parcel ID:** 16-09-00137-00 | |

**Fees:**

| | | |
|---|---|---|
| RECORDING FEES: | $37.50 | **Instrument Number:** 2023005900 |
| COUNTY IMPROVEMENT FUND: | $5.00 | **Volume/Page:** RECORD BK 6889 PG 3612 |
| JCS/ATJ FEE: | $40.25 | **Recorded Date:** 02/22/2023 9:52:40 AM |
| WRIT TAX: | $0.50 | |
| **Total Fees:** | $83.25 | |
| **Amount Paid:** | $83.25 | |
| **Amount Due:** | $0.00 | |

OFFICIAL RECORDING COVER PAGE

## DO NOT DETACH

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has
been corrected.  The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL
INFORMATION.

McCabe Weisberg & Conway, LLC
1420 Walnut Street, Suite 1501
Philadelphia, PA 19102

Record and Return To:
McCabe Weisberg & Conway, LLC
1420 Walnut Street, Suite 1501
Philadelphia, PA 19102
Attn: Nikki Phan

## <u>Assignment of Mortgage</u>

For good and valuable consideration received, the undersigned holder of a mortgage, **FINANCE OF AMERICA REVERSE LLC F/K/A URBAN FINANCIAL OF AMERICA, LLC F/K/A URBAN FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS**, whose address is 8909 South Yale Avenue, Tulsa, Oklahoma 74137 , hereby grants, sells, assigns, transfers and conveys without warranties and without recourse, unto **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR FINANCE OF AMERICA STRUCTURED SECURITIES ACQUISITION TRUST 2019-HB1**, whose address is 3900 Capital City Boulevard, Lansing, MI 48906, the mortgage dated March 25, 2013, executed by **HORTENSE C. TIPPETT, A SINGLE PERSON** securing the principal of $307,500.00, recorded on May 20, 2013, in Mortgage Book 5329, Page 316 in the Office of the Recorder of Deeds for Delaware County, Commonwealth of Pennsylvania, along with all rights accrued or to accrue under said Mortgage.

The property encumbered by the Mortgage is located in Delaware County, Commonwealth of Pennsylvania, known as and located at 346 Congress Avenue, Lansdowne, PA 19050, as described in the following legal description:

SEE ATTACHED LEGAL DESCRIPTION

Assignee certifies that the precise address of Wilmington Savings Fund Society, FSB, not individually but solely as Trustee for Finance of America Structured Securities Acquisition Trust 2019-HB1, is 3900 Capital City Boulevard, Lansing, MI 48906.

Attested by: _____

Name/Position: Desiree Scavo      Assistant Secretary

TO HAVE AND TO HOLD, Assignee, its successors and assigns, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
_____ FEB 2 1 2023 _____.

> Compu-Link Corporation d/b/a Celink, Attorney-in-Fact for Finance of America Reverse LLC f/k/a Urban Financial of America, LLC f/k/a Urban Financial Group, Inc., its successors and assigns
>
> Signature: _____
>
> Name: _____ Desiree Scavo _____
>
> Title: Assistant Secretary
>
> Date: FEB 2 1 2023

## FORM OF CORPORATE ACKNOWLEDGMENT

State of      TEXAS      )

County of      TRAVIS      )      ) SS:

On this _____ day of _____ FEB 2 1 2023 _____, 20____, before me the undersigned officer, personally appeared Desiree Scavo _____ who acknowledged himself or herself to be the _____ Assistant Secretary _____ of Compu-Link Corporation d/b/a Celink, Attorney-in-Fact for Finance of America Reverse LLC f/k/a Urban Financial of America, LLC f/k/a Urban Financial Group, Inc., its successors and assigns, and that he or she as such Assistant Secretary _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself or herself as Assistant Secretary _____

In witness whereof, I here unto set my hand and official seal.



NOTARY PUBLIC                    TIMOTHY TODD

TIMOTHY TODD
My Notary ID
Expires September 22, 2025

## LEGAL DESCRIPTION
## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF DELAWARE, STATE OF Pennsylvania, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND, SITUATE TO THE TOWNSHIP OF UPPER DARBY, COUNTY OF DELAWARE AND THE COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED IN ACCORDANCE WITH A PLAN OF PROPERTY MADE FOR HOVET H. JOHNSON BY GILROY DAMON AND ASSOCIATES, INC., CIVIL ENGINEERS OF SHARON HILL, PENNSYLVANIA ON APRIL 11, 1973 AS FOLLOWS, TO WIT:-

BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF CONGRESS AVENUE (50 FEET WIDE) AT THE DISTANCE OF 300.40 FEET MEASURED SOUTHWESTERLY ALONG THE SAID SIDE OF CONGRESS AVENUE FROM THE SOUTHWESTERLY CORNER OF CONGRESS AVENUE EXTENDED AND THE TITLE LINE IN THE BED OF BARRETT ROAD (45 FEET WIDE).

CONTAINING IN FRONT OR BREADTH ON CONGRESS AVENUE MEASURED SOUTH 24 DEGREES 23 MINUTES 65 FEET AND EXTENDING OF THAT WIDTH TO LENGTH OR DEPTH BETWEEN PARALLEL LINES ON A COURSE OF 65 DEGREES 37 MINUTES WEST BEING AT RIGHT ANGLES TO SAID CONGRESS AVENUE, 100 FEET.

MORE COMMONLY KNOWN AS 346 CONGRESS AVENUE

Commonly known as 346 CONGRESS Avenue, Lansdowne, PA 19050
However, by showing this address no additional coverage is provided

Fill in this information to identify your case:

| Debtor 1 | __Hortense__ | __C.__ | __Tippett__ |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: __Eastern__ District of __Pennsylvania__

Case number (if known) __24-11685__

☐ Check if this is an amended filing

<u>Official Form 106D</u>

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | **Column A** Amount of claim Do not deduct the value of collateral. | **Column B** Value of collateral that supports this claim | **Column C** Unsecured portion If any |
|---|---|---|---|

| **2.1** **Celink** | Describe the property that secures the claim: | **$352,547.91** | **$260,724.00** | **$91,823.91** |
|---|---|---|---|---|

Creditor's Name

__Attn: Bankruptcy__

| 346 Congress Ave Lansdowne, PA 19050-1004 |
|---|

__3900 Capital City Blvd__

Number        Street

**As of the date you file, the claim is:** Check all that apply.

__Lansing, MI 48906-2147__

City        State        ZIP Code

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number ___ ___ ___ ___

| Add the dollar value of your entries in Column A on this page. Write that number here: | **$352,547.91** |
|---|---|